# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUST MARION JANIS, | CASE NO. 1:04-cv-05812-SKO PC |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| v. | |
| UNITED STATES OF AMERICA, et al., | (Doc. 92) |
| Defendants. | THIRTY (30) DAY DEADLINE |

## I. Procedural Background

Plaintiff Gust Marion Janis ("Plaintiff") is a federal prisoner proceeding pro se in this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which provides a remedy for violation of civil rights by federal actors and pursuant to 28 U.S.C. § 1346(b) (the Federal Tort Claims Act, "FTCA"). The FTCA provides a limited remedy for torts committed by federal employees. This action is proceeding on Plaintiff's Fourth Amended Complaint, filed January 18, 2008. (Doc. 55.)

## II. Defendants' Motion to Dismiss

Pending before the Court is Defendants'[1] motion to dismiss, filed March 12, 2010. (Doc.

---

[1] While only some of the defendants named in this action initially filed this motion, other defendants have joined in such that, as of the date the reply brief was filed (November 19, 2010) the term "Defendants" refers collectively to the following Defendants, each of whom is a movant herein: United States of America, Matthew Brown, Troy Carlson, Daniel Claridy, John DeVere, Charles Grigg, Robert Haro, Al Herrera, Jeffrey Horton, Dennis Johnson, Ravonna Johnson, Frank Karam, Joseph Keffer, Joel Marshall, Christine Milligan-Moore, Darla Nodle, Maria Orozco, Roger Pacheco, Rey Rijos, Michael Sanford, Paul Schultz, Dennis Smith, Jerilyn Spencer, Thomas Stahley, Mark Stephenson, and Robert Tuite. (Doc. 131, *ref.* Docs. 100-103, 109, 111, 121.) Defendants Solis and Henderson are deceased. (Docs. 65, 100.)

92, MTD.)  Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because:  (1) the FTCA judgment bar, 28 U.S.C. § 2676, bars Plaintiff's *Bivens* action against Defendants in light of the judgment on plaintiff's FTCA claim, previously filed in the Central District of California ("the Central District Case")[2] based on the same subject matter; (2) the FTCA claim is barred by res judicata in light of the judgment entered in the Central District Case; (3) certain of the *Bivens* claims are barred by the two-year statute of limitations; and (4) the allegations in the Fourth Amended Complaint are insufficient to state plausible *Bivens* claims. (*Id.*, 1:20-2:3.)  Defendants also bring an "unenumerated" Rule 12(b) motion to dismiss on the grounds that Plaintiff has failed to exhaust administrative remedies for some of his *Bivens* claims as required by 42 U.S.C. § 1997e(a) and move for dismissal based on improper venue pursuant to Rule 12(b)(3) because most of the conduct in the Fourth Amended Complaint is alleged to have occurred at the United States Penitentiary at Lompoc, California -- which is not located in the Eastern District of California.  (*Id.*, 2:4-9.)  Finally, Defendants argue that certain of the individuals named as defendants in the Fourth Amended Complaint, who have not been served and have not waived service, must be dismissed from this action for insufficient service of process pursuant to Rule 12(b)(5) and for untimely service pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  (*Id.*, 2:10-13.)

Plaintiff requested and received multiple extensions to file his opposition, which was filed on September 13, 2010.[3]  (Docs. 96, 110, 113, 116, 120, 125).  Defendants requested and received an extension to file their reply, which was filed on November 19, 2010.  (Docs. 124, 127, 131.)  The motion was deemed submitted pursuant to Local Rule 78-230 upon

/ / /

/ / /

---

[2] *See Janis v. U.S.A.*, 2:05-cv-06738-AHM-E.  Defendants request that the Court take judicial notice of the following from case 2:05-cv-06738-AHM-E: the docket sheet; the Second Amended Complaint; the May 29, 2009 order granting Defendants' Motion to Dismiss; the judgment entered in favor of Defendants; and the September 15, 2009 Order of the United States Court of Appeals finding the appeal so insubstantial as to not be permitted to proceed.  Defendants' Request for Judicial Notice (Doc. 92-2) is granted.

[3] Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on April 4, 2008.  *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).  (Doc. 59.)

1  filing of the reply.[4]

2  **A.    The Federal Tort Claims Act -- Judgment Bar**

3  "The United States is immune from suit unless it consents to be sued." *Graham v. U.S.*,
4  96 F.3d 446, 448 (9th Cir. 1996) (*citing United States v. Mitchell*, 445 U.S. 535, 538 (1980)).
5  The FTCA " 'waives the sovereign immunity of the United States for certain torts committed by
6  federal employees "under circumstances where the United States, if a private person, would be
7  liable to the claimant in accordance with the law of the place where the act or omission
8  occurred." ' " *Vacek v. U.S. Postal Service*, 447 F.3d 1248, 1250 (9th Cir. 2006) (*quoting Smith*
9  *v. United States*, 507 U.S. 197, 201 (1993) (emphasis omitted) (*quoting* 28 U.S.C. § 1346(b)));
10 *see also* 28 U.S.C. § 2674.  Federal courts have jurisdiction to hear claims for damages for injury
11 or loss under the FTCA.  28 U.S.C. § 1346(b)(1).

12 Defendants argue that Plaintiff's *Bivens* claims (Claims 1-8) are barred by the FTCA's
13 judgment bar since the Central District Case was based on the same factual allegations and was
14 dismissed for lack of jurisdiction on statute of limitations grounds because Plaintiff did not file
15 his FTCA action within six months of denial of his administrative claim as required by 28 U.S.C.
16 § 2401(b).  (Doc. 92-1, MTD P&A, 12:12-14:27.)

17 The judgment bar rule of the FTCA provides that "[t]he judgment in any action under
18 section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by
19 reason of the same subject matter, against the employee of the government whose act or omission
20 gave rise to the claim."  28 U.S.C. § 2676.

21 The FTCA's judgment bar precludes *Bivens* claims where a previous FTCA claim was
22 dismissed based on lack of subject matter jurisdiction.  *Gasho v. United States*, 39 F.3d 1420,
23 1436-38 (9th Cir.1994) (district court's dismissal of the plaintiff's FTCA abuse of process claim
24 under Rule 12(b)(6) was upheld on the alternative grounds that the claim was barred under an
25 exception to the FTCA's waiver of sovereign immunity – upholding lack of subject matter

---

[4] All references to page numbers are specific to the pagination in the upper-right corner as imprinted by the Court's CM/ECF docketing process rather than the pagination on the bottom center of the pages as submitted by the parties.

1  jurisdiction as the basis for upholding the FTCA judgment and precluding related *Bivens* claims.)
2  "[*A*]*ny* FTCA judgment, regardless of its outcome, bars a subsequent *Bivens* action on the same
3  conduct that was at issue in the prior judgment." *Id.* (emphasis in original). Under § 2676, a
4  *Bivens* action related to a previously dismissed FTCA claim may proceed only to the extent that
5  it arises out of factual allegations different from those raised in the FTCA claim. *See Pesnell v.*
6  *Arsenault*, 543 F.3d 1038 (9th Cir. 2008) (action raising *Bivens* claims and Racketeering
7  Influenced and Corrupt Organizations Act ("RICO") claims was allowed to proceed only to the
8  extent that the claims arose out of factual allegations not raised in a previous action where FTCA
9  claims were dismissed for lack of subject matter jurisdiction). "[T]he statute of limitations in 28
10 U.S.C. § 2401(b) is jurisdictional." *Marley v. U.S.*, 567 F.3d 1030 (9th Cir. 2009).

11     In his opposition, Plaintiff argues that the FTCA judgment bar does not bar his *Bivens*
12 claims in this case because his FTCA claim in the Central District Case was "not based on the
13 same subject matter, nor where [sic] the defendant were [sic] named as *Bivens* defendant or
14 served with a Summons and Complaint." (Doc. 125, Plntf. Opp., p. 3.) Plaintiff then delineates
15 the circumstances under which the Central District Case was terminated. (*Id.*, at pp. 4-5.)
16 However, as noted in Defendants' reply, the assertion that the Central District Case was not
17 based on the same subject matter as the Fourth Amended Complaint is unsupported by a review
18 of the pleadings and Plaintiff "does not identify a single instance where the claims differ, nor
19 does he refute any portion of the comparison presented in defendants' opening brief which shows
20 that the FTCA claim in the Central District and the *Bivens* claims here are nearly identical."
21 (Doc. 131, Def. Reply, 5:13-18 (*ref.* Doc. 125, pp. 3-4).)

22     Defendants provide a very detailed rendition of the factual parallels between Plaintiff's
23 factual allegations in the Central District Case and those of the Fourth Amended Complaint in
24 this action. (Doc. 92-1, MTD P&A, 9:1-11-10.) However, this rendition fails to show any
25 correlation between Plaintiff's allegations in paragraph 14 ("Claim 7") in the Fourth Amended
26 Complaint in this action (Doc. 55, FAC, ¶ 14) and the factual allegations in the Central District
27 Case. Indeed, the pleadings from both actions reveal no similarities such that Claim 7 in the
28 Fourth Amended Complaint, for deliberate indifference to Plaintiff's serious medical needs

against Defendants Schultz, Milligan, Rios, DeVere, Spencer, Wolf, Stahley, Orozco, and Rios, is not subject to the FTCA's judgment bar.

With the exception of Claim 7, the allegations in Plaintiff's *Bivens* claims are based on the same factual allegations raised in the previously dismissed FTCA claims in the Central District Case. Accordingly, the FTCA's judgment bar precludes Plaintiff's *Bivens* Claims 1-6, and 8 in this action. *See Gasho*, 39 F.3d at 1436-38. As noted above, the FTCA's judgment bar does not preclude Claim 7 (Doc. 55, FAC, ¶ 14) since no similar allegations were stated in the Central District Case.

### B. Res Judicata

Defendants move for dismissal under the doctrine of *res judicata* which bars the re-litigation of claims previously decided on their merits.[5] *Headwaters, Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 (9th Cir. 2005). "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims *that were raised or could have been raised* in the prior action." *Western Radio Services Col, Inc. v. Glickman*, 123 F.3d 1189, 1192 (1997) (emphasis added) (*citing Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir.1982)).

Defendants argue that they are entitled to dismissal of Plaintiff's FTCA claim ("Claim 9") because the Central District Case and its resolution bars Plaintiff from proceeding on his claims under the FTCA in this action. (Doc. 92-1, MTD P&A, p. 15.) Claim preclusion, like issue preclusion, is an affirmative defense. *See* Fed. Rule Civ. Proc. 8(c). "The elements necessary to establish res judicata are: '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.'" *Headwaters, Inc.*, 399 F.3d at 1052 (*quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.2d 1064, 1077 (9th Cir. 2003)).

/ / /

/ / /

---

[5] Plaintiff did not oppose or file any response to Defendants' arguments for dismissal under *res judicata*. However, the Court declines Defendants' invitation to summarily treat Plaintiff's failure to respond as a waiver and reviews Defendants' motion on the merits.

1.      **Identity of Claims**

The transaction test, developed in the context of claim preclusion, is used to ascertain whether successive causes of action are the same. *Adams v. California Dept. of Health Services*, 487 F.3d 684, 689 (9th Cir. 2007). "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Id.* (*quoting Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir.1992) (*citing* Restatement (Second) of Judgments § 24(1) (1982)). In applying the transaction test, four criteria are to be examined:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* (*quoting Costantini*, 681 F.2d at 1201-02). However, "[t]he last of these criteria is the most important." *Costantini* at 1202.

It is evident from the record in the Central District Case, of which notice is taken, *see Harrington v. Vandalia-Butler Bd. of Education*, 649 F.2d 434, 441 (6th Cir.1981), and the pleadings in this case, that the Central District Case and the vast majority of Plaintiff's claims in this action arise out of the same transactional nucleus of facts. Defendants painstakingly delineated that paragraphs 6-13, 15-20, 22-24, and 26-27 of the Fourth Amended Complaint are repetitious of allegations found in specific paragraphs in the operative pleading in the Central District Case. (Doc. 92-1, MTD P&A, 10:1-11:10.)

2.      **Final Judgment on the Merits**

"The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995). The Central District Case was dismissed because Plaintiff filed his FTCA claim after the applicable statute of limitations had run which satisfies the final judgment on the merits element as to Claim 9 in this action. (Doc. 92-2, Def. RJN, pp. 29-30.)

### 3. Privy Between Parties

"There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940). *See also Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir.1980) (per curiam); *Mervin v. FTC*, 591 F.2d 821, 830 (D.C.Cir.1978). "The crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy." *Sunshine Anthracite*, 310 U.S. at 403 (*citing Gunter v. Atlantic Coast Line Railroad Co.*, 200 U.S. 273, 284-89 (1906)).

The privity element of *res judicata* is met. Some Defendants, including the United States of America, were named in both the Central District Case and the Fourth Amended Complaint. Defendants who were named in the Fourth Amended Complaint, but were not named in the Central District Case, are all officers of the same government such that privity attaches. Accordingly, Plaintiff is precluded by the doctrine of *res judicata* from pursuing Claim 9. (Doc. 55, 4th Amd. Compl., ¶¶ 18-20, 22-24, and 26-27).

### C. Leave to Amend

When granting a motion to dismiss, a court generally is required to grant leave to amend unless amending the pleadings would be futile. *See Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1049-50 (9th Cir.2006). As set forth above, Plaintiff is precluded under both the judgment bar and the doctrine of *res judicata* from relitigating claims based on factual allegations raised in a prior suit. Thus, further amendment to Claims 1-6, 8, and 9 would be futile as, in order to state a cognizable claim upon which he might be allowed proceed, Plaintiff would need to state factual allegations wholly different from those alleged in this action. Given the screening of Plaintiff's allegations under 28 U.S.C. § 1915A(a) that has already taken place in this case and the restrictions of Federal Rule of Civil Procedure 18(a), any such new and different factual allegations would only be properly raised in an entirely new action.

Since the judgment bar and the doctrine of *res judicata* are dispositive as to Plaintiff's

7

Claims 1-6, 8, and 9 in the Fourth Amended Complaint (Doc. 55, 4th Amd. Compl., ¶¶ 6-13, 15-16, 18-20, 22-24, and 26-27) Defendants' arguments and any opposition by Plaintiff regarding venue, plausibility of claims, exhaustion of administrative remedies, expiration of the applicable statute of limitations, and dismissal of various defendants based on insufficient service of process need not be reached on those claims.[6]  However, Claim 7 in the Fourth Amended Complaint is subject to any such arguments, where made, since it is the only claim to survive the FTCA's judgment bar and *res judicata*.

### D. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff did not exhaust his available administrative remedies as to the allegations contained in Claim 7 in the Fourth Amended Complaint. (Doc. 92-1, MTD P&A, 24:18-26:14.)

Pursuant to the Prison Litigation Reform Act of 1995, [n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  *Jones v. Bock*, 549 U.S. 199, 210-212 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal," *Woodford*, 548 U.S. at 83-84.

The Administrative Remedy Program, which allows federal inmates to grieve almost any aspect of their confinement, entails three steps. (Doc. 92-3, Syed Decl., ¶2 (*citing* 28 C.F.R. §

---

[6] Defendants only raised the argument that this Court is not the proper venue as to Claims 1-6 in the Fourth Amended Complaint.  (Doc. 92-1, MTD P&A, pp. 27-28.)  Defendants also only raised the argument that the applicable statute of limitations had expired as to Claims 1-5 in the Fourth Amended Complaint.  (*Id*., at pp. 16-17.)  These arguments need not be addressed as to Claim 7.

8

542 *et seq*.).) The grievance must first be presented to institutional staff to attempt informal resolution. (*Id.*, at ¶3.) If the issue is not resolved informally, the inmate is to present the initial formal complaint (using a form BP-9) to the institution staff, at which time it is given a distinct number and the initial filing is indicated by the letter "F," for example 100000-F1. (*Id.*) If the inmate is not satisfied with the resolution at the first formal level, the inmate may appeal his complaint to the Regional Director (using form BP-10), which is tracked by the same identification number assigned at the lower level, with the letter "F" being changed to a letter "R." (*Id.,* at ¶4 (*citing* 28 CFR 542.15).) Procedural deficiencies will result in rejections with explanations and allowances for correction and re-filing. (*Id.* (*citing* 28 CFR 542.17).) If the inmate is not satisfied with the response from the Regional Director, he or she may file a final appeal to the national Appeals Administrator at the Central Office of the BOP (using a form BP-11), referencing the same identification number as utilized at the lower levels, but changing the letter to an "A." (*Id.*, at ¶5 (*citing* 28 CFR 542.17).) Procedural deficiencies at this level will also result in rejection with explanations and opportunity for correction and re-filing. (*Id.*) "An inmate has not exhausted his administrative remedies until he has filed his complaint at all three levels and has been reviewed at all three levels." (*Id.*, at ¶5 (*citing* 28 CFR 542.17).)

In Claim 7, Plaintiff alleges that, while housed at USP Atwater, he was medically and physically unable to walk the distances between the housing units for medical services or law library without suffering extreme fatigue, shortness of breath, chest pains, numbness and severe pain in his arms, jaws, throat, and upper back – which would require him to stop and, if possible, sit and wait until the symptoms subsided. (Doc. 55, 4th Amd. Compl., ¶ 14.) Because of this condition, Plaintiff was never able to reach the law library before all the seats, typewriters, and books were occupied by the younger, more physically fit inmates. (*Id.*) Plaintiff alleged that he complained of the situation by letter and grievances, but that Defendants Schultz, Milligan, DeVere, Spencer, Wolf, Stahley, Orozco, and Rios refused his requests and made it more difficult for Plaintiff which caused his heart to be further damaged. (*Id.*)

Defendants present evidence that Plaintiff has filed more than seven hundred (700) administrative grievances during his federal incarceration. (*Id.*, at ¶ 6.) Plaintiff's filings

regarding his incarceration at Atwater were searched both by remedy numbers (as alleged by Plaintiff in the Fourth Amended Complaint) and by category, but no administrative grievance was found claiming Plaintiff "was denied a wheel chair or assistance in walking between locations." (*Id.*, at ¶ 9.) However, Defendants submit copies of Plaintiff's administrative grievance number 335160 in which, at the level of institutional staff, he mentioned the need to be placed in the housing unit (5) which was half way between Food Service and the Law Library, as when housed too far away he had to take nitro to stop his heart from hurting, and ultimately complained that he had a medical condition which required him to be single celled. (Doc. 92-3, Syed Decl., Ex. 4, p. 44.) This administrative grievance was pursued to the final level, though rejected at each level for Plaintiff not having attempted informal resolution prior to submission of the grievance at the first formal level. (*Id.*, at pp. 35-45.) Defendants present the declaration from Ms. Syed which states that "this remedy was not exhausted" as it "was rejected at each level" and that the "rejections were explained but never corrected." (*Id*., at ¶ 10.)

When the actual administrative grievances are reviewed, the reason(s) stated for rejection of Plaintiff's grievance at each of the formal levels was his failure to attempt informal resolution prior to submitting the grievance and/or to provide the necessary evidence (listed in the rejection notices at the first and last levels) and his failure to first file a BP-9 through the institution for the Warden's review and response (listed in the rejection notice at the second and last levels). (*Id*., at Ex. 4, pp. 35, 37, 39.) Yet, the following pages of Defendants' own exhibits reveal a Warden's response, dated April 6, 2004, addressing Plaintiff's concerns regarding the proximity of his housing unit to the law library. (*Id.*, at p. 41.) The Warden's response states that it was generated as a result of Plaintiff's correspondence dated March 31, 2004, which appears to confirm that Plaintiff raised the issue at the institutional level prior to presenting this grievance at the first formal level. (*Id.*) While Defendants did not submit Plaintiff's correspondence, Plaintiff submitted a copy of a letter sent to Warden Penn, among others, where he raised the issue of his placement in a housing unit which was such a distance from the law library that it took him five to ten minutes and two to three "nitros" to get there. (Doc. 125, Plntf. Opp., Exh. J-60C - F, at D, p. 92.)

1    Defendants argue that a letter does not satisfy the BOP administrative exhaustion
2 procedures, and even if it did, that correspondence would not suffice since Plaintiff makes no
3 mention about denial of a *wheelchai*r.  (Doc. 131, Def. Reply, p. 8, n. 2.)  However, the evidence
4 Defendants submitted and cite in support of this argument, which generally outlines the BOP
5 Administrative Remedy Program, does not clearly state any such requirement of form at the
6 institutional level.  (Doc. 92-3, Syed Decl., ¶¶ 3-5.)  Defendants also errantly persist in arguing
7 that Plaintiff must have requested a *wheelchair* in the grievance process to have adequately
8 addressed his claims in the Fourth Amended Complaint.  However, as previously discussed,
9 Plaintiff's Claim 7 in the Fourth Amended Complaint is premised on the proximity of his
10 Housing Unit to Medical Services and the Law Library, and that he needed to be housed in the
11 middle so as to be able to traverse to either on his own; it never mentioned a *wheelchair*.  (Doc.
12 55, 4th Amd. Compl., ¶14.)

13    Further, Plaintiff submitted a copy of an Inmate Request to Staff, dated March 6, 2004,
14 where he states under the subject, "at your suggestion I hereby submit this request to be returned
15 to 5B Housing Unit that is halfway between Food Service and the Law Library for Medical
16 reasons."  (*Id.*, at p. 71.)  The response circled Plaintiff's date of "3/6/04" and noted received
17 "4/6/04"as the responding staff believed Plaintiff meant the latter date concerning their
18 conversation and advised Plaintiff to wait for the Warden's response since Plaintiff previously
19 raised the issue with him.  (*Id.*)  This evidence implies that Plaintiff attempted informal
20 resolution of the issue with prison staff who advised him to wait for the Warden's response (*id.*)
21 which was subsequently delivered to Plaintiff on April 19, 2004 (Doc. 92-3, Syed Decl., Exh. 4,
22 p. 41).  Defendants do not address this document and thus fail to show that it did not suffice as
23 correction of deficiencies by Plaintiff at the informal level.

24    Finally, in Plaintiff's correspondence to Warden Penn, Plaintiff complained that his
25 attempts to informally resolve this and other issues were met with responses from staff that he
26 needed to present his complaints in writing on an Inmate Request to Staff form; he complied, but
27 on later inquiry, was told that such complaints had never been received.  (*Id.*, at p. 91-92.)
28 "[I]mproper screening of an inmate's administrative grievances renders administrative remedies

'effectively unavailable' such that exhaustion is not required under the PLRA. If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). "To fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." (*Id.*, 623 F.3d at 823-24.)

As previously discussed, Plaintiff filed a grievance that, if pursued through all levels of administrative appeals, would have sufficed to exhaust Claim 7 regarding the proximity of his housing unit to the Medical Services and the Law Library in relation to his health/cardiac condition. Further, in his opposition, Plaintiff argues and submits evidence to show that prison staff frustrated his efforts to comply with the administrative grievance process, by either not providing him the forms, or not processing the grievances he gave to them until past the deadlines for him to have timely filed – which is why Plaintiff mailed letters to various prison officials. (Doc. 125, Plntf. Opp., pp. 21-23; Janis Decl., p. 26.) Defendants fail to address this issue which lends credence to Plaintiff's assertion that he was thwarted in his attempts to use the BOP's administrative grievance process such that it was unavailable to him for exhaustion purposes.

Further, while it appears that Plaintiff did not file an administrative grievance precisely seeking a *wheelchair* or *assistance walking* between locations, Plaintiff submitted evidence to show that when he was transferred between housing units to Housing Unit 1A, he filed an administrative grievance stating that every time he went to the library he suffered severe chest pains requiring him to take "two to three nitros" and requested that he be provided a proper housing unit for his medical condition along with a "BP-8 Request." (Doc. 125, Plntf. Opp., Exh. J-40, p. 68.) This was sufficient notice to prison staff that Plaintiff was having a problem

12

1  waking the distances between his assigned housing unit and the medical services or law library
2  without suffering fairly dire medical symptoms, as an inmate grievance need not contain every
3  fact necessary to prove each element of an eventual legal claim. *Griffin v. Arpaio* 557 F.3d 1117,
4  1120 (9th Cir. 2009). The "Disposition" noted on this administrative grievance was that Plaintiff
5  could obtain the "BP-8" form from his counselor, his medical concerns were noted, and he was
6  advised to report these problems to health services during sick call. (Doc. 125, Plntf. Opp., Ex.
7  J-40, p. 68.) This disposition, liberally construed, appears to have granted Plaintiff's request at
8  least in part, as Plaintiff's medical concerns were noted, he was advised to see his counselor for a
9  form, and advised to tell health services of the issue at sick call. *See Harvey v. Jordan*, 605 F.3d
10 681, 684-85 (9th Cir. 2010) (finding prisoner had exhausted where his inmate appeal received a
11 "partial grant" of his first request – "An inmate has no obligation to appeal from a grant of relief,
12 or a partial grant that satisfies him, in order to exhaust his administrative remedies").

13 Failure to exhaust is an affirmative defense, not a pleading requirement. *Jones*, 549 U.S.
14 at 216. Defendants are not entitled to dismissal of Claim 7 under an unenumerated 12(b)(6)
15 motion as they have not met their burden of showing that, as to Claim 7, Plaintiff did not exhaust
16 the administrative remedies to the extent they were available to him, nor have they addressed
17 Plaintiff's showing that he was frustrated in his efforts to use the administrative grievance
18 process so as to excuse him from complying with the exhaustion requirement.

19  **E.  Plausibility**

20 Defendants move for dismissal of Claim 7[7] on the basis that it does not allege a plausible
21 *Bivens* claim. (Doc. 92-1, MTD P&A, pp. 18-19.)

22 "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited
23 exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534
24 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a

---

[7] Once again, Claim 7 is the only claim that need be addressed since all others are properly dismissed with prejudice. Also, Defendants argue that individuals Gant, Luna, and Booth should be dismissed as they were not included in the order finding service of the Fourth Amended Complaint appropriate (Doc. 57), or in the order directing service thereof (Doc. 58), and Luna is deceased (Doc. 91). In fact, while Plaintiff named Gant, Luna, and Booth as defendants in prior pleadings, they were not named as defendants in the operative pleading (the Fourth Amended Complaint) such that it is appropriate to terminated them from the docket of this action.

13

short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) *quoting Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Defendants move for dismissal on Claim 7, arguing that it "does not allege the required connection or link between each specific defendant's actions and the deprivation plaintiff allegedly suffered." (Doc. 92-1, MTD P&A, 19:25-27 (*citing Rizzo v. Goode*, 423 U.S. 362, 371 (1976), *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980), *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Claim 7 is found at paragraph 14 of the Fourth Amended Complaint. (Doc. 55, 4th Amd. Compl., ¶ 14.) In that paragraph, Plaintiff alleges that when he attempted to walk the distance between his housing unit, medical services, or the law library, his medical condition caused him to experience extreme fatigue, shortness of breath, chest pains, pain and numbness in his arms, jaws, throat, and upper back force him to stop and, if possible, sit. (*Id.*) By the time his symptoms subsided and he was able to ultimately arrive at the law library, all of the typewriters and books were taken by younger, physically fit inmates. (*Id.*) Plaintiff alleges that he submitted letters and grievances on this situation, but that Defendants Schultz, Milligan, DeVere, Spencer, Wolf, Stahley, Orozco, and Rios "intentionally and deliberately made it more difficult for [Plaintiff] causing his heart to be further damaged." (*Id.*)

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,

___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 555. While factual allegations are accepted as true, legal conclusions are not.  *Iqbal.* at 1949; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 556-557.  "[P]laintiffs [now] face a higher burden of pleadings facts . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), and while a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Plaintiff's allegations that he submitted letters and grievances[8] on this situation, but that Defendants Schultz, Milligan, DeVere, Spencer, Wolf, Stahley, Orozco, and Rios "intentionally and deliberately made it more difficult for [Plaintiff] causing his heart to be further damaged" (Doc. 55, 4th Amd. Compl., ¶4) are nothing more than recitals of the buzz words in an Eighth Amendment claim, followed by conclusory allegations, as a prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (*quoting Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (*quoting Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).  While Plaintiff alleges that the Defendants intentionally and deliberately made his condition worse, he does not set forth any specific allegations to support his position.

Accordingly, Claim 7, against Schultz, Milligan, DeVere, Spencer, Stahley,

---

[8] For amendment purposes, Plaintiff is reminded that actions in reviewing prisoner's administrative appeals cannot serve as the basis for liability under a § 1983 action.  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

15

Orozoco, and Rios[9] for deliberate indifference to Plaintiff's serious medical needs is properly dismissed with leave to amend.

### F. Dismissal of Unserved Defendants

Defendants argue for dismissal under Rule 4(m) for failure to effect timely service and under Rule 12(b)(5) for insufficient service of process of the following eight people because the U.S. Marshal filed unexecuted summons:[10]  Herrera (Doc. 60); Haro (Doc. 62); Solis (deceased) (Docs. 63, 100); Pacheco (Doc. 64); Henderson (deceased) (Doc. 65); Wolf (Doc. 66); Stephenson (Doc. 67); and Stahley (Doc. 68).

Herrera, Haro, Pacheco, Stephenson, and Stahley joined in the present motion and waived service by voluntarily appearing. (Docs. 111, 122.) Accordingly, Defendants' motion to dismiss Herrera, Haro, Pacheco, Stephenson, and Stahley for failure to effect timely service and for insufficient service of process was rendered moot by their voluntary appearance and joinder in this motion.

A suggestion of death was filed as to Solis (Doc. 100), a summons was returned noting that Henderson was deceased (Doc. 65), and, despite two attempts, Wolf has yet to be served (Docs. 66, 115). On September 15, 2010, Plaintiff was ordered to show cause why Defendants Henderson, Solis, and Wolf should not be dismissed from this action. (Doc. 123.) Plaintiff responded agreeing Defendants Henderson and Solis should be dismissed. (Doc. 130.) Plaintiff also stated that service on Defendant A. Wolf had not been attempted at U.S.P. Atwater, but that if such service had been attempted without success, "a non-opposition to dismiss [Defendant] Wolf should be filed." (*Id.*)

Since the U.S. Marshall attempted to serve Defendant Wolf at U.S.P. Atwater (*see* Doc. 66) before attempting service via the litigation coordinator/affairs department at F.C.I. Lompoc (Doc. 115), Plaintiff's statement that he agrees to the filing of a non-opposition to dismiss Defendant Wolf if service at U.S.P. Atwater is unsuccessful is construed as Plaintiff's agreement

---

[9] Defendant Wolf is not included in the Defendants against whom Plaintiff is granted leave to amend. See following section for discussion as to dismissal of Defendant Wolf.

[10] Doc. 92-1, MTD P&A, 26:15-26.

1  to the dismissal of Wolf as a defendant in this action.

2  Accordingly, Defendants Joe Henderson, Ray Solis, and A. Wolf are properly dismissed.

**III.   Conclusion:**

For the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part such that Plaintiff's Fourth Amended Complaint is dismissed with leave to file a fifth amended complaint solely to re-allege Claim 7 against Defendants Warden Paul Schultz, C. Milligan, J. DeVere, J. Spencer, Thomas W. Stahley, M. E. Orozco, and Ray F. Rios for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment within thirty (30) days.  If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension no later than thirty (30) days from the date of service of this order.

In filing a fifth amended complaint, Plaintiff is reminded that he must demonstrate how the conditions complained of have resulted in a deprivation of his constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980).  The fifth amended complaint must allege in specific terms how each named defendant is involved.  There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  *Rizzo*, 423 U.S. 362, *May*, 633 F.2d at 167, *Johnson*, 588 F.2d at 743.

Plaintiff's fifth amended complaint should be brief.  Fed. R. Civ. P. 8(a).  It should contain a short and plain statement so as to "give [each] defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly* 550 U.S. at 555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957).)  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that a fifth amended complaint supercedes the original complaint and all previously filed amended forms thereof, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies solely as

17

to Claim 7 as identified in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims or defendants in his fifth amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Defendants' motion to dismiss Claims 1-8 of the Fourth Amended Complaint as barred by the FTCA Judgment Bar is GRANTED IN PART and DENIED IN PART:
   a. It is GRANTED as to Claims 1-6, and 8 and they are hereby dismissed with prejudice; and
   b. It is DENIED as to Claim 7;
2. Defendants' motion to dismiss Claim 9 of the Fourth Amended Complaint under *res judicata* is GRANTED and Claim 9 is dismissed with prejudice;
3. Defendants' motion to dismiss Claim 7 of the Fourth Amended Complaint based on Plaintiff's failure to exhaust his administrative remedies is DENIED;
4. Defendants' motion to dismiss Claim 7 on the basis that it does not allege a plausible *Bivens* claim is GRANTED;
   a. As Claim 7 is the only remaining claim in this action, the Fourth Amended Complaint is dismissed with leave to amend solely Claim 7 (against Defendants Warden Paul Schultz, C. Milligan, J. DeVere, J. Spencer, Thomas W. Stahley, M. E. Orozco, and Ray F. Rios for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment);
5. All Defendants, other than Defendants Warden Paul Schultz, C. Milligan, J. DeVere, J. Spencer, Thomas W. Stahley, M. E. Orozco, and Ray F. Rios are dismissed from this action;
6. The Clerk's Office shall send Plaintiff a civil rights complaint form;
7. Within **thirty (30) days** from the date of service of this order, Plaintiff must file a

fifth amended complaint curing the deficiencies identified by the Court in this order solely re-alleging Claim 7 (against Defendants Warden Paul Schultz, C. Milligan, J. DeVere, J. Spencer, Thomas W. Stahley, M. E. Orozco, and Ray F. Rios for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment); and

8. If Plaintiff fails to comply with this order, this action will be dismissed, with prejudice, for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

**Dated:    March 30, 2011**                         /s/ Sheila K. Oberto
                                            UNITED STATES MAGISTRATE JUDGE