# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUST MARION JANIS, | CASE NO. 1:04-cv-05812-SKO PC |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | (Doc. 137) |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | ORDER FOR THIS DISMISSAL TO COUNT AS A STRIKE PURSUANT TO 28 U.S.C. §1915(g) |

I.      **Procedural Background**

Plaintiff Gust Marion Janis ("Plaintiff") is a federal prisoner proceeding pro se in this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which provides a remedy for violation of civil rights by federal actors and pursuant to 28 U.S.C. § 1346(b) (the Federal Tort Claims Act hereinafter "FTCA"). The FTCA provides a limited remedy for torts committed by federal employees.

Dismissal of the Fourth Amended Complaint ("4thAC") was previously sought under Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] as: (1) the FTCA judgment bar, 28 U.S.C. § 2676, barred Plaintiff's *Bivens* action in light of the judgment on the FTCA claim Plaintiff previously filed in the Central District of California; (2) the FTCA claim was barred by *res judicata* in light of the judgment entered in the Central District Case; (3) certain of the *Bivens*

---

[1] The Federal Rules of Civil Procedure will be referred to as "Rule *." Any reference to other statutory authorities shall so indicate.

claims were barred by the two-year statute of limitations; and (4) the allegations in the 4thAC were insufficient to state plausible *Bivens* claims. (Doc. 92, Prior MTD, 1:20-2:3.) Dismissal was also sought on the grounds that Plaintiff failed to exhaust administrative remedies for some of his *Bivens* claims as required by 42 U.S.C. § 1997e(a) and based on improper venue pursuant to Rule 12(b)(3) since most of the allegations in the 4thAC occurred at the United States Penitentiary at Lompoc, California -- which is not located in the Eastern District of California. (*Id.*, 2:4-9.) Finally, Defendants argued that individuals named as defendants in the 4thAC who had neither been served, nor waived service, were entitled to dismissal for insufficient service of process pursuant to Rule 12(b)(5) and for untimely service pursuant to Rule 4(m). (*Id.*, 2:10-13.) This motion was granted in part and denied in part, and Plaintiff was given leave to file a fifth amended complaint to attempt to state a claim against Defendants John De Vere, Christine Milligan-Moore, Maria Orozco, Rey Rijos, Paul Schultz, Jerilyn Spencer, and Thomas Stahley ("Defendants")[2] for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. (Doc. 135, O on Prior MTD.)[3]

On April 25, 2011, Plaintiff filed the Fifth Amended Complaint ("5thAC"). (Doc. 136.) Shortly thereafter, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), alleging that the 5thAC fails to state a claim for deliberate indifference to Plaintiff's serious medical needs by Defendants in violation of the Eighth Amendment. (Doc. 137.) Plaintiff filed an opposition (Doc. 142) and Defendants filed a reply (Doc. 143). This motion was deemed submitted pursuant to Local Rule 78-230 upon the filing of the reply.[4] For the reasons discussed below, Defendants' motion to dismiss is granted, the 5th AC is dismissed with prejudice, and the Clerk of the Court is directed to close the case.

/ / /

---

[2] While a number of defendants were previously named, these are the only remaining Defendants in this action. (*See* Doc. 135, O on Prior MTD.)

[3] The order granting and denying the motion to dismiss the 4thAC (Doc. 135) will be referred to as "the Prior MTD Order."

[4] All page numbers refer to the pagination in the upper-right corner as imprinted by the Court's CM/ECF docketing process rather than the pagination on the bottom center of the pages as submitted by the parties.

1    **II.    Motion to Dismiss under F.R.C.P. 12(b)(6) -- Standards**

2           Under Rule 12(b)(6) a claim may be dismissed because of a plaintiff's "failure to state a

3    claim upon which relief can be granted."  A dismissal under Rule 12(b)(6) may be based on the

4    lack of a cognizable legal theory, or on the absence of sufficient facts alleged under a cognizable

5    legal theory.  *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008);

6    *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule

7    12(b)(6), the court accepts the complaint's material allegations of fact as true and construes these

8    facts in the light most favorable to the non-moving party.  *Marceau v. Balckfeet Hous. Auth.*, 540

9    F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999).  However,

10   the court is not required "to accept as true allegations that are merely conclusory, unwarranted

11   deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

12   1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

13   Although they may provide the framework of a complaint, legal conclusions are not accepted as

14   true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory

15   statements, do not suffice."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009); *see*

16   *also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  As the

17   Supreme Court has explained:

18          While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
            need detailed factual allegations, a plaintiff's obligation to provide the
19          "grounds" of his "entitlement to relief" requires more than labels and
            conclusions, and a formulaic recitation of the elements of a cause of action
20          will not do. Factual allegations must be enough to raise a right to relief above
            the speculative level, on the assumption that all the allegations in the
21          complaint are true (even if doubtful in fact).

22   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, "a complaint must contain

23   sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

24   *Iqbal*, 129 S.Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual

25   content that allows the court to draw the reasonable inference that the defendant is liable for the

26   misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.

27          The plausibility standard is not akin to a probability requirement, but it asks
            more than a sheer possibility that a defendant has acted unlawfully. Where a
28          complaint pleads facts that are merely consistent with a defendant's liability, it

3

1    stops short of the line between possibility and plausibility of entitlement to
     relief.
2    . . .

3    Determining whether a complaint states a plausible claim for relief will . . . be
     a context specific task that requires the reviewing court to draw on its judicial
4    experience and common sense. But where the well-pleaded facts do not permit
     the court to infer more than the mere possibility of misconduct, the complaint
5    has alleged – but it has not shown – that the pleader is entitled to relief.

6    *Iqbal*, 129 S.Ct. at 1949-50 (internal cites and quotes omitted).  "In sum, for a complaint to

7    survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

8    that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v.*

9    *United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

10   **III.   The 5thAC**

11         Plaintiff's allegations in the 5thAC appear to be premised on difficulties he experienced

12   in accessing the law library based on his housing placement in combination with his medical

13   condition.  As discussed in prior proceedings in this case, Plaintiff does not have a

14   constitutionally protected right in access to the law library.  *Lewis v. Casey*, 518 U.S. 343, 345

15   (1996).[5]  Plaintiff has failed to state a claim for denial of access to the courts based on his

16   inability to access the law library and his efforts to state a claim on that ground were

17   unsuccessful.  (*See* Doc. 32, Screen O, 4:10-22 (vacated on other basis in Doc. 35); Doc. 35,

18   Screen O, 4:16-5:13, 9:3-4; Doc. 41, Screen F&R, 4:1-5:10; Doc. 43, O Adopt.)  Further,

19   Plaintiff's allegations in the 4thAC did not allege any denial of access to the courts based on the

20   proximity of his housing unit to the law library, but rather complained that the proximity of his

21   housing unit to the law library amounted to deliberate indifference to his serious medical

22   condition.  (Doc. 55, 4th Amd. Compl., ¶ 14.)

23         The Prior MTD Order granted Plaintiff leave to file the 5thAC solely to perfect his

24   allegations of deliberate indifference to his serious medical condition.  (Doc. 135, O on Prior

25   MTD.)  Accordingly, the only question in this motion is whether Plaintiff's allegations in the

26

27   _____

28         [5] This standard has been repeatedly given to Plaintiff over the years that this case has been pending.  (*See*
     Doc. 32, Screen O, 4:10-22 (vacated on other basis in Doc. 35); Doc. 35, Screen O, 4:16-5:13; Doc. 41, Screen
     F&R, 4:1-5:10.)

Case 1:04-cv-05812-SKO   Document 144   Filed 08/26/11   Page 5 of 12

5thAC state a claim that Defendants were deliberately indifferent to Plaintiff's serious medical needs.

In the 5thAC, Plaintiff alleges that, upon arrival at USP Atwater and after medical evaluation, he was housed in Unit 3. (Doc. 136, 5th AC, p. 3, ¶ IV.) However, when walking between his housing unit, medical services, or the law library, he experienced "extreme fatigue, shortness of breath, chest pains, pain and numbness in his arms, jaws, throat, and upper back force [sic] him to stop and if possible to sit." (*Id.*) "By the time his symptoms subsided and he was able to ultimately arrive at the law library, all of the typewriters and books were taken by younger, physically fit inmates. (*Id.*) "Plaintiff complained to medical and his Unit Team and [sic] transferred to housing Unit 5." (*Id.*) On page 4 of the 5thAC, Plaintiff further alleges:

> While I was housed in Unit 5 I complained about the law library and wrote several administrative remedies. Unit Manager Orozco and Counselor Spencer walked me over to Unit one and in my present [sic] spoke to J. DeVere, Unit Manager concerning my health, need of a bottom bunk and the facts [sic] that I could be far from health services in case of an emergency. Plaintiff explained the need to work on his legal materials and he could not walk the distance to the law library and they refused to talk about it, ignore [sic] it because it was doing [sic] legal.
> At noon the next day I spoke to Warden Stahley and he spoke to the Clinical Director who explained my medical problem. Warden Stahley asked the Clinical Director if Unit 1 was sufficient for me [sic] medical needs and told him it was. I explained that I needed to go to the law library and the conditions it caused. He refused.
> Later Assist [sic] Warden Rios was acting Warden and I spoke with him personally and he totally ignored me.
> J. DeVere over the next 3 months on a daily bases [sic] refused to take my complaints about me being housed in Unit 1 and refused to correct it. Continuing from the date Plaintiff entered Housing Unit one he submitted letters and grievances of this situation, but defendants Schultz, Milligan, DeVere, Spencer, Stahley, Orozco and Rios "intentionally and delibreately [sic] made it more diffucult [sic] for casuing [sic] his heart to be further damaged. He continued to be ordered by Lieutenants to health services each and every time he could not make it to the law library, until June 7, 2004 on the way to the law library he suffered a heart attack was taken by ambulence [sic] to the hospital and had a quadruple bypass operation.[6]

## IV.   Defendants' Motion to Dismiss

Defendants argue that the 5thAC does not state a plausible claim as it "does not allege

---

[6] For purposes of this motion, the Court assumes that Plaintiff's heart condition qualifies as a serious medical condition.

1   that there was an excessive risk to [Plaintiff's] health and safety or that each named Defendant

2   knew of and disregarded the excessive risk" such that "there was nothing 'cruel and unusual'

3   about plaintiffs' [sic] housing assignment."  (Doc. 137-1, MTD, 5:26-28.)  Defendants argue that

4   the allegations in the 5thAC "establish[] that prison officials attended to plaintiff's medical

5   needs" (*id.*, at 6:1) and that Plaintiff fails to demonstrate how the conditions he complains of

6   deprived him of constitutionally protected rights (*id.*, at 5:22-27).

7       To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

8   conditions must involve "the wanton and unnecessary infliction of pain."  *Rhodes v. Chapman*,

9   452 U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the

10  level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of

11  the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with

12  deliberate indifference in doing so.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)

13  (*quoting Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison

14  official does not act in a deliberately indifferent manner unless the official "knows of and

15  disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834

16  (1994).  "Deliberate indifference is a high legal standard."  *Toguchi*, 391 F.3d at 1060.  "Under

17  this standard, the prison official must not only 'be aware of the facts from which the inference

18  could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

19  inference.'"  *Id.* at 1057 (*quoting Farmer*, 511 U.S. at 837).  "If a prison official should have

20  been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

21  matter how severe the risk."  *Id.* (*quoting Gibson v. County of Washoe, Nevada*, 290 F.3d 1175,

22  1188 (9th Cir. 2002)).[7]

23      The allegations in the 5thAC do not show that any of the named Defendants were

24  deliberately indifferent to Plaintiff's serious medical condition.  Plaintiff alleges that when he

25  complained and wrote several administrative remedies about the law library while housed in Unit

26

27

28      [7] These standards were given to Plaintiff in 2007 in the Findings and Recommendations which screened the Third Amended Complaint and in the Prior MTD Order.  (Doc. 41, Screen F&R, 4:1-5:10; Doc. 135, O on Prior MTD, 15:10-25.)

1   5, Defendants Orozco and Spencer walked Plaintiff over to Unit 1 where they spoke with

2   Defendant DeVere (the Unit 1 Manager) concerning Plaintiff's health, his need for a bottom

3   bunk, and the fact that he "could be far from health services in case of an emergency."[8]  (Doc.

4   136, 5thAC, p. 4.)  Plaintiff expressed that he needed to work on his legal materials and could

5   not walk the distance to the law library, but that these three Defendants "refused to talk about it,

6   ignore it because, it was doing legal."  (*Id.*)

7         These allegations do not show that Defendants Orozco, Spencer, and DeVere were

8   deliberately indifferent to a serious/excessive risk of harm to Plaintiff.  Instead, the allegations

9   show that Defendants Orozco and Spencer took the time to personally walk Plaintiff over to the

10   Defendant DeVere to discuss Plaintiff's desire to have closer access to the law library and

11   considered the fact that such placement could cause Plaintiff to "be far from health services in

12   case of an emergency."  (*Id.*)  These allegations show that concern by Defendants Orozco,

13   Spencer, and DeVere for Plaintiff's medical condition and risks to his well-being (protected

14   under the Eight Amendment) prevailed over Plaintiff's desire to be closer to the law library (an

15   interest, though of great concern to Plaintiff, is not constitutionally protected).  These allegations

16   fail to state a claim for deliberate indifference against Defendants Orozco, Spencer, and DeVere

17   to Plaintiff's serious medical condition.

18         Plaintiff alleges in the 5thAC that he spoke with Defendant Stahley the day after he spoke

19   with Defendants Orozco, Spencer, and DeVere.  Defendant Stahley then "spoke to the Clinical

20   Director who explained [Plaintiff's] medical problem."  (*Id.*)  Defendant Stahley asked if "Unit 1

21   was sufficient for [Plaintiff's] medical needs" and received an affirmative response.  (*Id.*)

22   Plaintiff further alleges that he explained to Defendant Stahley his need "to go to the law library

23   and the conditions that it caused," but that Defendant Stahley "refused."  (*Id.*)  These allegations

24   do not show that Defendant Stahley's refusal to move Plaintiff to Unit 1 was due to deliberate

25

26      [8] It is unclear whether Plaintiff intended this quoted phrase to mean that he did not need to be housed in a

27   facility close to health services, or if there is a typographical error and that Plaintiff intended to allege that they
  discussed the fact that he should not be housed far from health services in case an emergency occurred.  However,

28   this factual discrepancy is of no consequence as the fact that the proximity of Plaintiff's housing unit to health
  services and resultant consequences if Plaintiff suffered a medical emergency was discussed shows that Defendants
  Orozco, Spencer, and DeVere considered his medical condition as a factor in determining his housing placement.

1  indifference to Plaintiff's serious medical need – particularly when viewed in light of Plaintiff's

2  allegations that he was transferred to housing Unit 5 after complaining to "medical and his Unit

3  Team" that the walk from his prior housing unit (Unit 3) to the law library caused a variety of

4  "extreme" cardiovascular symptoms.  (*Id.*, at p.3.)

5         In the 5thAC, Plaintiff alleges that he spoke to Defendant Rios "personally and he totally

6  ignored" Plaintiff.  (*Id.*, at p. 4.)  Plaintiff does not set forth facts regarding what he spoke to

7  Defendant Rios about and/or what information he conveyed to Defendant Rios during this

8  conversation.  The allegation that Defendant Rios totally ignored Plaintiff, without more, does

9  not state a cognizable claim against Defendant Rios for being deliberately indifferent to

10 Plaintiff's serious medical needs.

11        The only allegations against Defendants Milligan and Schultz in the 5thAC are that they

12 "'intentionally and delibreately [sic] made it more diffucult [sic] for [sic] casuing [sic] his heart

13 to be further damaged."  (*Id.*, at p. 4.)  Plaintiff also makes this sweeping allegation against

14 Defendants DeVere, Spencer, Orozco, Stahley, and Rios.  (*Id.*)  These allegations amount to

15 nothing more than conclusory, threadbare recitals as to a portion of the elements of Plaintiff's

16 claim which fall short of stating a plausible claim of deliberate indifference to Plaintiff's serious

17 medical needs.

18        Thus, Plaintiff's allegations in the 5thAC do not give rise to a cognizable claim for

19 deliberate indifference to his serious medical needs in violation of the Eight Amendment.

20 **V.    Plaintiff's Opposition**

21        In his opposition, Plaintiff argues that Defendants should be estopped by *res judicata*

22 from moving to dismiss the 5thAC since the claim he attempts to state was found cognizable in

23 the 3rdAC.  (Doc. 142, Plntf. Opp., ¶¶ 1-7.)

24        This argument fails as the doctrine of *res judicata* applies to bar the re-litigation of only

25 claims that were previously decided on their merits.  *Headwaters, Inc. v. U.S. Forest Serv.*, 399

26 F.3d 1047, 1051 (9th Cir. 2005).  "*Res judicata*, also known as claim preclusion, bars litigation

27 in a subsequent action of any claims that were raised or could have been raised in the prior

28 action."  *Western Radio Services Col, Inc. v. Glickman*, 123 F.3d 1189, 1192 (1997) (*citing*

1   *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Costantini v. Trans World*

2   *Airlines*, 681 F.2d 1199, 1201-02 (9th Cir.1982)).  "The elements necessary to establish *res*

3   *judicata* are: '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between

4   parties.'"  *Headwaters, Inc.*, 399 F.3d at 1052 (*quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe*

5   *Reg'l Planning Agency*, 322 F.2d 1064, 1077 (9th Cir. 2003)).  A motion to dismiss per Rule

6   12(b)(6) may involve similar claims between similar parties as those addressed in screening

7   under 28 U.S.C. § 1915 in the same action, but finding a claim cognizable to proceed at the

8   screening stage is not a final judgment on the merits.

9        Further, Plaintiff fails to account for the fact that stricter pleadings standards have come

10   into existence between the time that the 3rdAC was screened and the filing of both the 5thAC

11   and the present motion.  Plaintiff was informed in the Prior MTD Order that while detailed

12   factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action,

13   supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129

14   S.Ct. 1937, 1949 (2009) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In

15   the 5thAC, Plaintiff was required to set forth "sufficient factual matter, accepted as true, to 'state

16   a claim that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at

17   555.  While factual allegations are accepted as true, legal conclusions are not.  *Iqbal.* at 1949; *see*

18   *also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Iqbal*, 129 S.Ct. at 1949;

19   *Twombly*, 550 U.S. at 556-557.  "[P]laintiffs [now] face a higher burden of pleadings facts . . . ,"

20   *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) (reversed and remanded on other

21   grounds), and while a plaintiff's allegations are taken as true, courts "are not required to indulge

22   unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009)

23   (internal quotation marks and citation omitted).  Plaintiff's 3rdAC was screened and found to be

24   cognizable prior to the ruling by the United States Supreme Court in *Iqbal*.

25        Complaints brought by prisoners seeking relief against a governmental entity or officer or

26   employee of a governmental entity are subject to court review pursuant to 28 U.S.C. § 1915A(a).

27   A complaint, or portion thereof, must be dismissed if the prisoner has raised claims that are

28   legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

1   that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

2   § 1915A(b)(1), (2).  "[T]he court shall dismiss the case *at any time* if the court determines that . .

3   . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

4   1915(e)(2)(B)(ii) (emphasis added).  The same review occurs when a motion to dismiss for

5   failure to state a claim is filed under Rule 12(b)(6).  It is merely a coincidence that Plaintiff's

6   3rdAC was screened before *Iqbal* came into existence and it is immaterial that prior screening of

7   this action was conducted under more lenient standards.  Once issued, precedent from higher

8   courts applies to all pending cases unless specified to the contrary.  The pleading standards set

9   forth in *Iqbal* apply to all claims screened and/or challenged under Rule 12(b)(6) subsequent to

10  the date that decision was rendered.  Accordingly, the previous more lenient screening of the

11  3rdAC does not bar Defendants from challenging the sufficiency of Plaintiff's allegations in the

12  5thAC.

13          Under the heading of "Res Judicata or Collateral Estoppel," Plaintiff cites "*Clinton v.*

14  *Cal. Dep't of Corr.*, 2008 U.S. Dist. Lexis 103505, December 23, 2008 (Easter [sic] Dist.

15  December 23, 2008 [sic]" and states that the Honorable Lawrence K. Karlton "adopted a

16  magistrate's findings and recommendations, than [sic] clarified that the ordinary exhaustion and

17  preclusion (that is, rejudicata [sic] and collaterial [sic] estoppel) rules apply to plaintiff's claims."

18  (Doc. 142, Plntf. Opp., p. 5.)  Plaintiff does not state why he believes the ruling in *Clinton*

19  applies to this motion.  The Eastern District case number for *Clinton v. Cal. Dept. of Corr.* is

20  2:05-cv-01600-LKK-CMK.  The order to which Plaintiff refers is Doc. 251 on the CM/ECF

21  docket for that case.  However, the footnote to which Plaintiff is referring does not imply that *res*

22  *judicata* and/or collateral estoppel apply to screening(s) of the complaint.  Rather, the footnote

23  indicates that the order, which adopted the findings and recommendations and denied a request

24  for injunctive relief, precluded any subsequent request for injunctive relief on the same

25  circumstances.  It did not address screening and/or cognizability of claims.  Thus, Plaintiff's

26  reliance on *Clinton* is misplaced and inapplicable to this motion.

27  **VI.    Leave to Amend**

28          When granting a motion to dismiss, a court generally is required to grant leave to amend

unless amending the pleadings would be futile.  *See Deveraturda v. Globe Aviation Sec. Servs.*,

454 F.3d 1043, 1049-50 (9th Cir.2006).

Plaintiff has been previously warned that an amended complaint supercedes all previously

filed complaints in an action, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997);

*King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), must be "complete in itself without reference

to the prior or superceded pleading," Local Rule 15-220, and that "[a]ll causes of action alleged

in an original complaint which are not alleged in an amended complaint are waived." *King,* 814

F.2d at 567 (*citing London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)); *accord

Forsyth*, 114 F.3d at 1474.  However, facts subject to judicial notice may be considered by a

court on a motion to dismiss. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir.2001);  *In

re Russell*, 76 F.3d 242, 244 (9th Cir. 1996); *Mullis v. United States Bankruptcy Court*, 828 F.2d

1385, 1388 (9th Cir. 1987).  Judicial notice may be taken of court records.  *See Colonial Penn

Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Mullis v. United States Bank. Ct.*, 828 F.2d

1385, 1388 n.9 (9th Cir. 1987); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th.

Cir. 1980); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D. Cal.1978), *aff'd*, 645

F.2d 699 (9th Cir.).  The Court will not accept as true allegations in a complaint that contradict

matters properly subject to judicial notice.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

(9th Cir. 2001).  Accordingly, judicial notice is taken of the pleadings Plaintiff filed in this case.

The Court notes that Plaintiff verified each of his pleadings in this case.  (*See* Doc. 1,

Orig. Compl., p. 51; Doc. 6, 1stAC, p. 51; Doc. 27, 2ndAC, p. 25; Doc. 39, 3rdAC, p. 27; Doc.

55, 4thAC, p. 15; Doc. 136, 5thAC, p. 3.)  The Court further notes that Plaintiff's allegations

have become more vague and nebulous as to which unit he was housed in, which housing unit he

believes he should have been housed in, and why his placement in a given housing unit amounted

to deliberate indifference to his serious medical condition.  (*See* Doc. 1, Orig. Compl., ¶¶ 31, 34,

37, 38, 44, 48, 49, 50, 53, 54; Doc. 6, 1stAC, ¶¶ 31, 34, 37, 38, 44, 48, 49, 50, 53, 54;[9] Doc. 27,

---

[9] Some of the applicable paragraphs noted from Doc. 1 and Doc. 6 reflect Plaintiff's housing only in as much as they mention which housing unit various prison staff were assigned to when Plaintiff filed complaints regarding his conditions.

2ndAC, ¶ 44, 49, 50; Doc. 39, 3rdAC, ¶¶ 40, 44, 45; Doc. 55, 4thAC, ¶¶15, 16, 14; Doc. 136, 5thAC, pp. 3-4.)  In general, it appears that the origin of Plaintiff's angst was the difficulties he had in ambling from his housing unit to the law library rather than the proximity of his housing unit to medical services.  In fact, Plaintiff appears to have been most dismayed when he was housed in a facility that was farthest from the law library and yet closest to medical services -- which does not and cannot amount to a cognizable claim for deliberate indifference to Plaintiff's serious medical needs.

Given the screening of Plaintiff's allegations that has already taken place in this case (both under 28 U.S.C. § 1915A(a) and via the Prior MTD Order), the number of times that Plaintiff has been given the applicable standards, and the fact that the operative pleading in this case is a Fifth Amended Complaint, it appears that Plaintiff is unable to state a cognizable claim for deliberate indifference to his serious medical needs.  Accordingly, granting further leave to amend the pleadings is futile.  Plaintiff's 5thAC is therefore dismissed without leave to amend.

**VII.   <u>Order</u>**

For the reasons set forth above, Defendants' motion to dismiss is granted and Plaintiff's Fifth Amended Complaint (Doc. 136) is dismissed without leave to amended.

Based on the foregoing, it is HEREBY ORDERED that:

1.      Defendants' motion to dismiss, filed May 6, 2011 (Doc. 137) is GRANTED;

2.      This action is DISMISSED with prejudice for failure to state a claim upon which relief may be granted;

3.      This dismissal shall count as a strike pursuant to 28 U.S.C. § 1915; and

4.      The Clerk of the Court is directed to enter judgment in Defendants' favor and against Plaintiff and to close this action.

IT IS SO ORDERED.

**Dated:   <u>August 25, 2011</u>**                    <u>/s/ Sheila K. Oberto</u>
                                          UNITED STATES MAGISTRATE JUDGE